**ON REHEARING EN BANC**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 04-4549

WILLIAM MOYE,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CR-03-528)

Argued: March 16, 2006

Decided: July 24, 2006

Before WILKINS, Chief Judge, WIDENER, WILKINSON,
NIEMEYER, LUTTIG,[1] WILLIAMS, MICHAEL, MOTZ,
TRAXLER, KING, GREGORY, SHEDD, and DUNCAN,
Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion for the court, in which Chief Judge Wilkins and Judges Wid-
ener, Wilkinson, Niemeyer, Williams, Traxler, King, Shedd, and
Duncan joined, and in which Judges Michael and Motz joined as to
Parts I and IIA and B. Judge Motz wrote an opinion concurring in part
and concurring in the judgment, in which Judge Michael joined.
Judge Gregory wrote an opinion dissenting in part.

---

[1]Judge Luttig was a member of the original *en banc* panel but did not
participate in this decision.

**COUNSEL**

**ARGUED:** William Scott Little, STARK & LITTLE, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, George L. Russell, III, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

William Moye appeals his convictions for being a felon in possession of firearms, 18 U.S.C. § 922(g)(1), and possession of stolen firearms, *id.* § 922(j). For the reasons stated below, we affirm.

I

A

At 5:30 a.m. on August 14, 2003, Anne Arundel County police officer Kurt Listman responded to a burglar alarm at Bart's Sporting Goods store at 6814 Richie Highway in Anne Arundel County, Maryland. When Officer Listman arrived, he saw a car parked next to a door on the side of the store. Officer Listman saw a person, who was later identified as Courtney Cooper, behind the wheel of the car, and another person, who was later identified as Jackie Briggs, trying to get into the car.

As Briggs tried to get into the car, Cooper sped off, leaving Briggs behind. Cooper eventually was apprehended after a high-speed chase. Briggs, who fled on foot, was also apprehended. The car was found to contain thirteen firearms taken from the store. Two more firearms taken from the store were recovered on Briggs' person. The fingerprints of Cooper, Briggs, and Moye were not found on any of the firearms.

As Officer Listman was "taking off" to chase Cooper, another Anne Arundel County police officer, Matthew Walters, spotted Moye crawling out of the store's side doorway. The side door to the store was no longer being used as an entrance because the side doorway leading into the store was framed with timber which created ten storage cubbyholes, each approximately eighteen inches by eighteen inches in size. (Government's Exhibits 2c, 2f). From the store's interior, an employee had easy access to the cubbyholes because the cubbyholes were located directly behind a set of hinged side-by-side doors used to hide, with the use of pegboard and merchandise, the cubbyholes from the store's retail space. Thus, in essence, the side-by-side doors created a small storage closet where equipment and merchandise were stored in the cubbyholes. The distance between the side-by-side doors and the store's gun display cabinets, which ran perpendicular to the doors, is approximately three feet. (Government's Exhibits 2g, 2h).

Officer Walters saw Moye crawling out of the store through the cubbyhole below the side door's knob. This cubbyhole was the only one that was not cluttered with boxes and/or store equipment/merchandise. (Government's Exhibits 2c, 2f). After Moye escaped through the cubbyhole, he fled on foot, but was later apprehended.[2]

### B

On April 20, 2004, a federal grand jury sitting in the District of Maryland returned a two-count superseding indictment against Moye. In Count One, Moye was charged with being a felon in possession of firearms, 18 U.S.C. § 922(g)(1). In Count Two, Moye was charged with possessing stolen firearms, *id.* § 922(j). Each count also charged Moye as an aider and abettor under 18 U.S.C. § 2.

At trial, Thomas Love, an ATF agent who was qualified as an expert in interstate nexus, testified that the firearms set forth in the

---

[2]The side door had pry marks on it, indicating a forced entry. A screwdriver was recovered next to the door, and the government presented evidence that the screwdriver could have been used to make the forced entry.

indictment affected interstate commerce because they were not manufactured in the State of Maryland. Alan Koch, the manager of the store, testified that all of the firearms stolen from the store's gun display cabinets functioned properly.

At the conclusion of the trial, a jury convicted Moye on both counts. On July 19, 2004, Moye was sentenced to thirty months' imprisonment. He filed a timely notice of appeal.

On September 9, 2005, a panel of this court reversed Moye's convictions. *See United States v. Moye*, 422 F.3d 207 (4th Cir. 2005). On October 18, 2005, the panel opinion was vacated, as a majority of active circuit judges voted to rehear this case *en banc*. *See* Fourth Circuit Local Rule 35(c) ("Granting of rehearing en banc vacates the previous panel judgment and opinion.").

II

A

Moye contends there is insufficient evidence in the record to support his convictions. Moye's convictions must be upheld if "there is substantial evidence, taking the view most favorable to the Government," to support them. *Glasser v. United States*, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (*en banc*). Moreover, we can reverse a conviction on insufficiency grounds only when the "prosecution's failure is clear." *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984) (citation and internal quotation marks omitted). In evaluating the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. Wilkinson*, 137 F.3d 214, 220 (4th Cir. 1998). We also assume that the jury resolved all contradictions in the testimony in favor of the government. *United States v. Sun*, 278 F.3d 302, 313 (4th Cir. 2002). Finally, where the evidence supports differing reasonable interpretations, the jury will decide which interpretation to accept. *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997).

Count One charged Moye with a violation of 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm, which has been shipped or transported in interstate commerce. *Id.* § 922(g)(1). We have previously explained that the elements required for conviction under § 922(g)(1) are:

> (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence.

*United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (*en banc*).[3] Under Count Two, which charged Moye with possessing stolen firearms in violation of 18 U.S.C. § 922(j), the government had to prove (1) Moye possessed stolen firearms, (2) which moved or were shipped in interstate commerce before or after being stolen, and (3) Moye knew or had reasonable cause to believe the firearms were stolen. *Cf. United States v. Hodges*, 315 F.3d 794, 799 (7th Cir. 2003) (setting forth elements for receiving stolen firearms under § 922(j)).

Under our possession jurisprudence, possession can be actual or constructive. *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). "Actual possession" is defined as "[p]hysical . . . control over property." Black's Law Dictionary 1201 (8th ed. 2004). Constructive possession is established if it is shown "that the defendant exercised, or had the power to exercise, dominion and control over the item." *Rusher*, 966 F.2d at 878. At its core, this case concerns Moye's actual possession of the firearms.

In this case, the jury unquestionably was at liberty to conclude that Moye possessed the firearms as they made their way from the store

---

[3]Moye does not challenge his status as a convicted felon. Moreover, he does not challenge the government's evidence at trial concerning the firearms' nexus to interstate commerce.

to Briggs' person and the getaway car. In fact, when the circumstantial evidence is viewed collectively and in the light most favorable to the government, *Glasser*, 315 U.S. at 80, the jury was entitled to conclude that Moye entered the store through the uncluttered cubbyhole of the side door opening, broke into the cabinets displaying the firearms, removed the firearms from such cabinets, and then passed them back through the same cubbyhole to the awaiting Briggs, who then put thirteen firearms in the car and kept two for himself.[4]

The circumstantial evidence begins with the manner in which the robbery was carried out. The getaway car's location next to the side door, the forced entry, and the fact that the store had an alarm all suggest that Cooper, Briggs, and Moye knew this was a race against time.

The next two pieces of circumstantial evidence are the size of the cubbyholes blocking the doorway and the fact that only one of the cubbyholes was uncluttered. (Government's Exhibits 2c, 2f). From these facts, the jury was entitled to draw the reasonable inference that only one person, Moye, as opposed to all three individuals, entered the store to retrieve and then remove the firearms.[5] Indeed, given the exceedingly small size of the entry space, it would have made little sense, in terms of efficiency, for Cooper, Briggs, and Moye to enter the store. Clearly, having one person in the store allowed for quick

---

[4]During its closing argument to the jury, the government made this precise argument:

> [C]ircumstantial evidence would indicate that it must have been him that took the guns out of the store. It had to have been him. There was nobody else in the store. And clearly, as common sense indicates, those guns didn't miraculously jump into the back of the car or jump into Briggs' pockets. . . . Someone had to take those things out, push them through that hole and hand them off to put them in that car and for Jackie Briggs to have them in his pocket and the only person in that store was William Moye.

[5]The positioning of Cooper, Briggs, and Moye as the officers arrived also supports the reasonable inference that only Moye entered the store. The jury could reasonably conclude that Moye's job was to enter the store and steal the firearms; Briggs' job was to load the firearms into the car; and Cooper's job was to drive the getaway car.

and easy access to everything in the store and allowed the items to be quickly passed through the uncluttered cubbyhole. The jury obviously was entitled to use its common sense and conclude that this tactic made eminently more sense than having two, or perhaps three, people enter the store through the small cubbyhole.[6]

The final pieces of circumstantial evidence are the time of the forced entry and Moye's flight. Given the hour of the forced entry (just before 5:30 a.m.), the jury was entitled to conclude that Moye was not present at the scene for an innocent purpose. In addition, the jury unquestionably was entitled to draw the reasonable inference that Moye fled because he knew he was prohibited under federal law from possessing firearms. *Cf. United States v. Obi*, 239 F.3d 662, 665 (4th Cir. 2001) ("It cannot be doubted that in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight and that a jury's finding of guilt may be supported by consciousness of guilt.").[7]

We recognize, in reaching our decision, that an argument can be made that Moye was merely present at the same location from which the firearms were stolen. Moreover, the government's failure to produce fingerprint evidence, though understandable, slightly weakens its case.[8] However, it was for the jury, not this court, to decide which version of the events—the government's or Moye's—was more credible. *Wilson*, 118 F.3d at 234.

---

[6]Along a similar vein, the jury was entitled to view Moye as a prime candidate to be the inside man in the robbery of the firearms. Officer Walters described Moye as a man with a "small frame, small build."

[7]Because it was reasonable for the jury to draw the inference that Moye fled because he knew he was prohibited under federal law from possessing firearms, we find no merit to Moye's argument that the district court erred when it allowed the government to argue in closing that Moye's flight was evidence of his consciousness of guilt.

[8]As explained by one of the government's expert witnesses, more often than not, fingerprints are not recovered from firearms. Indeed, this government expert noted that firearms are manufactured to prevent the accumulation of fingerprints. Given this testimony, it is not surprising that the fingerprints of neither Cooper, Briggs, nor Moye were not found on any of the firearms.

To be sure, as appellate judges, we enjoy no greater vantage point on appeal than did the jury at trial and we have no right to usurp the jury's role to find facts. *Glasser*, 315 U.S. at 80. If we did otherwise, we would be substituting our judgment for that of the jury. In this case, the jury was entitled to reach the reasonable and quite unremarkable conclusion that Moye possessed the firearms as they made their way from the store to Briggs' person and the getaway car. Moye's possession of the firearms as they made their way from the store to Briggs' person and the getaway car provides substantial evidence supporting both of his convictions.

B

Moye also contends that his separate convictions under § 922(g)(1) and § 922(j) violate the principles of multiplicity set forth by the Supreme Court. *See Bell v. United States*, 349 U.S. 81, 84 (1955) (holding that if "Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses"). Moye's reliance on the *Bell* line of cases is misplaced.

In *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir. 1998), the defendant was convicted of seven counts of violating § 922(g)(1) (which prohibits a felon from possessing any firearm or ammunition) and seven counts of violating § 922(g)(3) (which prohibits a drug user from possessing any firearm or ammunition) arising from firearms and ammunition seized from his house on October 4, 1995. *Dunford*, 148 F.3d at 387. Applying *Bell* and its progeny, we held that "a person who is disqualified because of membership in multiple classes [of § 922(g)] does not thereby commit separate and multiple offenses." *Dunford*, 148 F.3d at 389. To hold otherwise, we opined, would, in effect, criminalize "the status itself." *Id.* Consequently, we held that the firearms and ammunition seized at the defendant's house only could support one conviction under § 922(g). *Dunford*, 148 F.3d at 390.

Moye's multiplicity argument fails for the simple reason that this case does not involve charges under different subparts of § 922(g); rather, this case concerns different subsections of § 922. Unlike the subparts of § 922(g), there is no question in this case that Congress

has fixed separate punishments for both § 922(g) and § 922(j). Moreover, the separate sections of § 922 under which Moye was convicted each require proof of different elements, thereby satisfying the *Blockburger* test. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each statute requires proof of a fact which the other does not). A conviction under § 922(j) requires proof that the defendant knew the firearm was stolen, while a conviction under § 922(g)(1) does not. A conviction under § 922(g)(1) requires proof of felony status, while a conviction under § 922(j) does not. For these reasons, we reject Moye's multiplicity argument. *Cf. United States v. Buchmeier*, 255 F.3d 415, 423 (7th Cir. 2001) (holding that the government properly limited the charges it filed against the defendant for the seven firearms he simultaneously acquired and received by listing all seven firearms involved in the transaction in one § 922(g)(1) count and one § 922(j) count); *United States v. Mansolo*, 129 F.3d 749, 750-51 (5th Cir. 1997) (holding that § 922(k) and § 922(i) are not multiplicitous); *United States v. Nation*, 832 F.2d 71 (5th Cir. 1987) (holding that § 922(g)(1) and § 922(i) are not multiplicitous).

C

Moye also challenges on several grounds the aiding and abetting instruction given by the district court. The decision to give or not to give a jury instruction is reviewed for an abuse of discretion. *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992). We review a jury instruction to determine "whether, taken as a whole, the instruction fairly states the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). By definition, a court "abuses its discretion when it makes an error of law." *United States v. Prince-Oyibo*, 320 F.3d 494, 497 (4th Cir. 2003) (citation and internal quotation marks omitted).

In its instructions to the jury, the district court gave an aiding and abetting instruction. The court's aiding and abetting instruction was a general instruction, in the sense that the court did not specifically instruct the jury as to which count (or counts) the aiding and abetting

instruction applied. The instruction told the jury that, to convict Moye under an aiding and abetting theory, the government had to prove

> beyond a reasonable doubt that, one, the crime charged was in fact committed by someone other than the defendant. Two, the defendant participated in the crime charged as something he wished to bring about. Three, he associated himself with the criminal venture knowingly and voluntarily and, four, he sought by his actions to make the criminal venture succeed.

Moye contends that the district court erred when it gave the general aiding and abetting instruction because it allowed the jury to convict him based on a finding that he "aid[ed] and abet[ted] himself." Appellant's Br. at 6. Unfortunately for Moye, the district court's aiding and abetting instruction did not allow the jury to convict Moye based on a finding that he aided and abetted himself. The instruction explicitly told the jury that it had to find beyond a reasonable doubt that "the crime charged was in fact committed by someone *other than the defendant*." (Emphasis added).

Moye also contends that the district court erred when it gave the general aiding and abetting instruction because the instruction lacked an evidentiary basis as to the § 922(g)(1) count. According to Moye, the instruction lacked an evidentiary basis as to the § 922(g)(1) count because there was no evidence that either Cooper or Briggs were felons.[9]

In our view, it was within the district court's discretion to give a general aiding and abetting instruction where there was an evidentiary basis to support the instruction as to the § 922(j) count, but not as to

---

[9]Unquestionably, the evidence in this case warranted an aiding and abetting instruction as to the § 922(j) count because the evidence supported a jury finding that Moye aided and abetted Cooper and Briggs' possession of stolen firearms. *Cf. Burgos*, 94 F.3d at 873 (holding that a defendant is "guilty of aiding and abetting if he has knowingly associated himself with and participated in the criminal venture") (citation and internal quotation marks omitted). Accordingly, we reject Moye's suggestion that the aiding and abetting instruction lacked an evidentiary basis as to the § 922(j) count.

the § 922(g)(1) count. In so concluding, we recognize that the more preferable approach would have been for the court to give an instruction that tailored the aiding and abetting theory exclusively to the § 922(j) count. However, we are not prepared to find an abuse of discretion here. Discretionary judgments of this kind are primarily entrusted to trial courts, as they inevitably have a superior feel for the dynamics of the trial and the likely reaction of the jury. Here, the court acted within its discretion when it declined to further highlight the aiding and abetting instruction by tailoring it to the § 922(j) count.

Moreover, the district court's general aiding and abetting instruction provided the jury with an appropriate means to evaluate the evidence and resolve the issues presented. With regard to the § 922(j) count, the instruction gave the jury an avenue to find Moye guilty as an aider and abettor if it concluded that someone other than Moye possessed stolen firearms and that Moye knowingly associated with and participated in the criminal venture. With regard to the § 922(g)(1) count, the instruction correctly allowed the jury to convict Moye *only* as a principal and *not* as an aider and abettor. As noted above, the instruction told the jury to first determine if "the crime charged [felon in possession of firearms] was in fact committed by someone other than the defendant." Because neither Cooper nor Briggs were felons, it is obvious that the jury readily determined that the aiding and abetting instruction applied only to the § 922(j) count and would not have permitted conviction under § 922(g)(1). *Cf. United States v. Olano*, 507 U.S. 725, 740 (1993) (noting that courts presume that jurors follow instructions from the court).

Even if we were to conclude that the district court's failure to limit the aiding and abetting instruction to the § 922(j) count was error, such error is harmless. In general, an error in a jury instruction will warrant reversal of the conviction only if "the error is prejudicial based on a review of the record as a whole." *United States v. Ellis*, 121 F.3d 908, 923 (4th Cir. 1997).

Through the district court's instructions, which we presume the jury followed, *Olano*, 507 U.S. at 740, the jury could not have convicted Moye of the § 922(g)(1) count under an aiding and abetting theory. The jury was instructed that, to convict Moye under an aiding and abetting theory, it would have to find beyond a reasonable doubt

that another person other than Moye actually committed a § 922(g)(1) violation. Because there was no evidence that either Cooper or Briggs were felons, the jury could not have concluded that Moye aided and abetted either Cooper or Briggs in the commission of a § 922(g)(1) violation. Consequently, the only way the jury could have convicted Moye under the § 922(g)(1) count was to conclude that Moye possessed the firearms at issue. As noted above, the evidence amply supports the conclusion that Moye possessed the firearms as they made their way from the store to Briggs' person and the getaway car. Because the jury necessarily found that Moye himself possessed the firearms at issue, the district court's failure to limit the aiding and abetting instruction to the § 922(j) count, if error, is harmless error.

Our conclusion that any error here was harmless also finds strong support in the Supreme Court's decisions in *Griffin v. United States*, 502 U.S. 46 (1991), and *Sochor v. Florida*, 504 U.S. 527 (1992). In *Griffin*, Griffin was charged with a single count of conspiracy to defraud the federal government. *Griffin*, 502 U.S. at 47. The conspiracy had the dual objects of hindering the IRS and the DEA in their official duties. *Id.* At trial, the government failed to produce any evidence whatsoever to connect Griffin to an effort to interfere with the DEA. *Id.* at 48. Over Griffin's objection, the district court instructed the jury that Griffin could be convicted of conspiracy if she had participated in either of the two objects of the conspiracy. *Id.* The jury returned a general guilty verdict against Griffin and her two codefendants. *Id.* The Supreme Court affirmed the conviction. *Id.* at 60. In so doing, the Court found no precedent to support Griffin's contention that a general verdict must be set aside where "one of the possible bases of conviction was neither unconstitutional . . . nor even illegal . . . but merely unsupported by sufficient evidence." *Id.* at 56. The Court concluded that there was a common sense reason to distinguish between a jury instruction which misstates the law and one which presents a theory of conviction not supported by the evidence:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally

inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

*Id.* at 59.[10]

The Supreme Court reiterated that position in *Sochor*. In *Sochor*, the trial court had instructed a capital jury on four aggravating factors, one of which was not supported by the evidence. 504 U.S. at 530-31. If the jury had relied on the unsupported factor, its death sentence recommendation would have violated the Eighth Amendment. *Id.* at 532. However, the Supreme Court refused to presume jury error and noted that jurors are "indeed likely to disregard an option simply unsupported by evidence." *Id.* at 538. According to the Court, the lesson of *Griffin* is that the Due Process Clause is not violated when "a trial court instruct[s] a jury on two different legal theories, one supported by the evidence, the other not." *Id.*

Having reviewed *Griffin*, *Yates*, and *Sochor*, we conclude that a district court does not commit reversible error when it submits a legally adequate, although factually unsupported, theory of liability to the jury along with a factually supported and legally adequate theory of liability. *See Griffin*, 502 U.S. at 60 ("What we have said today does not mean that a district court cannot, in its discretion, give an instruction of the sort petitioner requested here, eliminating from the jury's consideration an alternative basis of liability that does not have

---

[10]The analysis undertaken when reviewing the submission of a factually unsupported theory of liability must be contrasted with the analysis undertaken when a legally inadequate theory of liability is presented to the jury. While the former analysis is conducted under *Griffin*, the latter is conducted under *Yates v. United States*, 354 U.S. 298 (1957). Under *Yates*, reversal is required when a case is submitted to a jury on two or more alternate theories, one of which is legally (as opposed to factually) inadequate, the jury returns a general verdict, and it is impossible to discern the basis on which the jury actually rested its verdict. 354 U.S. at 311-12; *see also United States v. Hastings*, 134 F.3d 235, 242 (4th Cir. 1998) (discussing the application of *Yates*).

adequate evidentiary support. Indeed, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction.").

In this case, it is undisputed that the district court's aiding and abetting instruction set forth a correct statement of law concerning the law of aiding and abetting. Moreover, it is not disputed that an aider and abettor can be convicted under § 922(g)(1). *See, e.g.*, *United States v. Canon*, 993 F.2d 1439, 1442 (9th Cir. 1993) (affirming § 922(g)(1) conviction that was premised on the theory of aiding and abetting). At most, then, the court's instructions placed one legally adequate factually supported basis for liability under § 922(g)(1) before the jury (Moye acted as a principal) and one legally adequate yet factually unsupported basis for liability under § 922(g)(1) before the jury (Moye acted as an aider and abettor). Under these circumstances, *Griffin* prevents us from tampering with the jury's verdict. *See United States v. Ealy*, 363 F.3d 292, 298 (4th Cir. 2004) (applying *Griffin* and concluding that, where the evidence was sufficient to convict the defendant as a principal, "whether the evidence sufficed to convict him on the alternative aiding and abetting theory is irrelevant"); *see also United States v. Chauncey*, 420 F.3d 864, 873 (8th Cir. 2005) (in a case involving the charge of possession with the intent to distribute, and aiding and abetting the same, court noted that, although it was not clear from the verdict whether the jury accepted one theory or both theories of liability, it could not disturb the defendant's conviction under *Griffin*); *United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996) ("Even assuming Dreamer is correct that there was insufficient evidence to support the district court's aiding and abetting instruction, the district court also instructed the jury that they could find Dreamer guilty if they found that he set the fire at his father's house. There was sufficient evidence to support this instruction, as Poor Bear testified that she saw Dreamer enter his father's house with a can of gasoline and set the house on fire. There was sufficient evidence to support one of the grounds for conviction submitted to the jury and to support the general verdict of guilty."). Accordingly, even assuming that the aiding and abetting instruction given in this case was erroneous because it was not supported by evidence demonstrating that either

Cooper or Briggs were felons, the giving of the instruction is not reversible error.

Finally, we make these observations concerning the opinion of our colleague in dissent. The dissent plucks one phrase out of the district court's aiding and abetting instruction and concludes that this phrase hopelessly confused the jury. According to the dissent, the phrase "physically committed by somebody else," which was used by the court at the beginning of its aiding and abetting instruction, allowed the jury to convict Moye for the § 922(g)(1) offense under an aiding and abetting theory without finding that either Cooper or Briggs were convicted felons. In other words, according to the dissent, if the jury found that Moye aided and abetted either Cooper or Briggs' possession of firearms, it was free at that point to convict Moye of the § 922(g)(1) offense.

The "physically committed by somebody else" phrase was used in the following sentence of the district court's aiding and abetting instruction: "As I will explain more fully, the Government would have to prove that the crime that was charged was physically committed by somebody else and further prove that Mr. Moye aided and abetted the commission of the crime." This sentence told the jury that: (1) the government, to prove aiding and abetting, was required to prove that a crime charged against Moye was physically committed by somebody other than Moye and that Moye aided and abetted the commission of the crime charged; and (2) the court would explain more fully the requirements of aiding and abetting.

The dissent suggests that the "physically committed by somebody else" phrase could have fooled the jury into believing that prohibited status was "not at issue" or, alternatively, that "prohibited status and physical possession did not have to reside in the same person." *Post* at 20. The dissent's position rests on the premise that the "physically committed by somebody else" phrase focused the jury's attention solely on the physical act of possession to the exclusion of the other elements required to convict under § 922(g)(1). In several respects, the dissent's reasoning is flawed.

First, when the district court used the "physically committed by somebody else" phrase as part of its introduction into the concept of

aiding and abetting, the court told the jury that it would "explain more fully" the concept. Given the court's admonition that the concept of aiding and abetting would be explained in greater detail, it is extremely doubtful the jury placed much, if any, reliance on the sentence.

Second, as a general statement of aiding and abetting law, the district court's sentence containing the "physically committed by somebody else" phrase was legally accurate. With regard to the § 922(g)(1) offense that was charged, to convict Moye as a principal, the government was required to prove that Moye previously had been convicted of a crime punishable by a term of imprisonment exceeding one year and that he knowingly possessed a firearm that was in or affecting commerce. To convict Moye as an aider and abettor, the government was required to prove that another person other than Moye committed the conduct amounting to a § 922(g)(1) violation and that Moye aided and abetted the commission of that crime. Meeting this burden would include proof that either Cooper or Briggs "physically" committed the conduct that made up a § 922(g)(1) violation. That conduct would include the commission of an offense that resulted in a conviction in a court of law of a crime punishable by a term of imprisonment exceeding one year prior to August 14, 2003.

Third, the "physically committed by somebody else" phrase was tied to a "crime that was charged" and not solely to the act of possession of a firearm. Thus, it is highly unlikely that the jury focused solely on either Cooper or Briggs' possession of firearms, as the dissent would have us believe. *See* Post at 20.

To be sure, the district court's more detailed instructions made it clear that Moye had to aid and abet a crime that was charged and not just an element of a crime charged. Following the court's use of the "physically committed by somebody else" phrase, the court gave detailed aiding and abetting instructions with defined elements without making reference to the phrase. The district court told the jury that "you may find Mr. Moye guilty . . . if you find beyond a reasonable doubt that the Government has proved that another person actually committed the offense with which he is charged and that the defendant aided and abetted that person in the commission of the offense." The court immediately added, "[a]s you can see, the first requirement

is that you find that another person has committed the crime charged." Thereafter, the court instructed the jury concerning the four aiding and abetting elements the government was required to prove beyond a reasonable doubt, one of those being that "the crime charged was in fact committed by someone other than the defendant." Considering the court specifically outlined the aiding and abetting elements the government had to prove beyond a reasonable doubt, we harbor no doubt that the introductory "physically committed by somebody else" phrase played no role in the jury's consideration of these elements.

## III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in Parts I and IIA and B and in the judgment:

As Judge Hamilton explains in his excellent opinion for the majority, in this case the Government presented evidence sufficient to support William Moye's convictions for being a felon in possession of firearms and for possession of stolen firearms. I write separately because I believe that the district court erred in giving a general aiding and abetting instruction. That error, however, was harmless, and so I agree that we must affirm the judgment of the district court.

A court may only give a requested jury instruction if an evidentiary foundation for the instruction exists. *See United States v. Schnabel*, 939 F.2d 197, 203-04 (4th Cir. 1991). Here, the Government concedes that "over the objection of appellant," the district court gave an aiding and abetting instruction that applied to both counts in the indictment. *See* Brief of Appellee at 4. The Government, however, presented no evidence that either Briggs or Cooper was a felon. Thus, there was no evidentiary foundation to support an aiding and abetting instruction on the felon in possession count (Count One); the court thus erred in giving a general instruction that applied to both counts. Indeed, the Government conceded error during the panel argument,

admitting that the district court should not have instructed the jury as to aiding and abetting on Count One.

Although the aiding and abetting instruction for the felon-in-possession count was error, the error was harmless. The Government presented ample evidence to support Moye's conviction as a principal on Count One. However, the district court instructed the jurors that to find Moye "guilty . . . as an aider and abettor," they would have to find beyond a reasonable doubt that the Government "has proved that another person actually committed the offense with which he has been charged." Given the absence of any evidence that Briggs or Cooper were felons, the jury could not have found that Moye aided or abetted "another person" who "actually committed" the offense of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2000). If the jurors followed the district court's instructions, which we must presume that they did, *see United States v. Olano*, 507 U.S. 725, 740 (1993), they could not have convicted Moye on Count One on the basis of an aiding and abetting theory. Therefore, we must conclude that the jury's guilty verdict with respect to Count One relied on the substantial evidence of Moye's guilt as a principal and that the district court's error in giving a generalized aiding and abetting instruction was harmless.

For these reasons, I concur in Parts I and IIA and B of the majority opinion and in the judgment. Judge Michael joins in this opinion.

GREGORY, Circuit Judge, dissenting in part:

The district court's aiding and abetting instruction requires vacatur of Moye's conviction on the felon-in-possession charge. Clearly, the district court erred in giving the aiding and abetting instruction for the felon-in-possession charge because the instruction lacked any foundation in evidence.[1] When considered alone, this error might have been

---

[1]An aiding and abetting instruction, like all jury instructions, is proper only "if there is a foundation in evidence to support it." *United States v. Schnabel*, 939 F.2d 197, 203-04 (4th Cir. 1991). Here, there was no foundation in the evidence to support an aiding and abetting instruction because the government introduced no evidence that Briggs or Cooper was a felon.

harmless. In this case, however, the instruction created confusion by suggesting that Moye could be convicted as an aider and abettor on the felon-in-possession charge absent proof that Cooper or Briggs was a felon. Therefore, I dissent from the decision to affirm Moye's conviction as to the felon-in-possession charge.[2]

At the close of evidence, the district court instructed the jury that it could convict Moye as a felon in possession of firearms if the government proved

> that Mr. Moye had been convicted of a crime punishable by imprisonment for a term exceeding one year and that the State has not restored the defendant's civil rights following the conviction. Secondly, that he knowingly possessed the firearm that's charged and third, that the possession was in or affecting interstate commerce.

J.A. 221-22. Moments later, the district court instructed the jury that to convict Moye as an aider and abettor on *either count*,

> the Government would have to prove that the crime that was charged was *physically committed by somebody else* and further prove that Mr. Moye aided and abetted the commission of the crime.

J.A. 226 (emphasis added).[3]

---

[2]I would affirm Moye's conviction on the possession of stolen firearms charge.

[3]During trial, Moye's counsel objected to the aiding and abetting instruction with respect to the felon-in-possession charge, stating, "I don't know how you aid and abet yourself." J.A. 129. The district court immediately replied, "Well, I don't have a problem with that. I don't have a problem with that." *Id.*

Only after the verdict did the district court acknowledge that "[a]iding and abetting doesn't work. . . . Aiding and abetting requires . . . somebody else to have committed the crime. Nobody else committed the crime." J.A. 263.

These instructions created confusion as to the requisite elements of the felon-in-possession offense in the aiding and abetting context. The phrase "physically committed by somebody else" suggested that only the principal's *physical* acts were relevant.[4] Although the felon-in-possession offense has a physical requirement—the act of possessing firearms—the offense also has an essential *nonphysical* requirement —the principal's prohibited status as a felon. With attention focused only on the principal's physical acts, a juror might reasonably have concluded that the principal's prohibited status was not at issue. Alternatively, a juror might have believed that prohibited status and physical possession did not have to reside in the same person.

In addition, the substantive felon-in-possession instruction and the lack of evidence concerning Cooper's or Briggs's prior felony convictions reinforced the understanding that their status was irrelevant. First, the felon-in-possession instruction only detailed how *Moye* might be convicted of being a felon in possession of firearms. Significantly, the district court never expressly instructed the jury that it had to find that Cooper or Briggs was a felon. Second, the government presented evidence of Moye's status as a felon without addressing that of the other two men. Given this glaring inconsistency, the jury could have concluded that evidence of the prohibited status of Cooper or Briggs was unnecessary. Thus, the jury could have believed that only Moye's prohibited status was at issue.

Ultimately, the language and context of the instructions did not make clear that either Cooper or Briggs needed to be a felon in order to convict Moye on an aiding and abetting theory. Absent a clear understanding that Cooper or Briggs had to be a felon, jurors could have convicted Moye as an aider and abettor even if they were aware that these two men were not felons. Alternatively, the jurors could have been distracted by the other evidence of criminality—Moye's status as a felon, the theft of the firearms, the burglary, and the car theft—all of which is irrelevant to a conviction for aiding and abetting a felon in possession.

---

[4]In fact, both the district court in its instructions and the government during closing argument repeatedly used the word "physically" to refer to the act of possessing firearms. *See, e.g.*, J.A. 223, 236.

For these reasons, applying a general presumption that jurors follow instructions cannot cure the error in offering the instruction. Because the government did not and cannot show that the error was harmless, I dissent.