**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4662**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

INGRID DINA LEVY,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:07-cr-00265-JCC-1)

Submitted: April 7, 2009        Decided: June 30, 2009

Before MICHAEL, MOTZ, and SHEDD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

Nathan Lewin, Alyza D. Lewin, LEWIN & LEWIN, LLP, Washington, D.C., for Appellant. Dana J. Boente, Acting United States Attorney, Jay V. Prabhu, Assistant United States Attorney, Thomas S. Dougherty, Tyler G. Newby, UNITED STATES DEPARTMENT OF JUSTICE, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ingrid Dina Levy was convicted by a jury of three counts of mail fraud, in violation of 18 U.S.C. § 1341 (2006), and four counts of wire fraud, in violation of 18 U.S.C. § 1343 (2006). Levy was sentenced to forty-six months' imprisonment and ordered to pay $168,300.77 in restitution. Levy appeals her convictions and sentence. We affirm Levy's convictions, but vacate the sentence and remand for resentencing.

I.

Viewing the evidence in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the facts can be summarized as follows: In 2004, Levy agreed to serve as the supplier for an online business selling wholesale women's fashions run by Ashley Foster. Pursuant to their agreement, Foster would take orders and collect payments and Levy would send the merchandise directly to the customer. In December of 2004, Judson Burdon ordered a number of items from the website and tendered payment via wire transfer to Foster. Foster forwarded the payment to Levy, who never sent the merchandise to Burdon. When Burdon complained to Foster, Levy advised Foster to make misrepresentations to Burdon, including inventing the name of a supplier that did not exist.

2

As a result of incidents similar to this one, Foster became the target of harassment and complaints from customers in online fora and eventually shut down the website. Foster and Levy then decided to start another online business, this time selling retail women's fashion clothing. Again, Levy was to be the supplier of the merchandise and informed Foster that she would send the items directly to the customers. The evidence at trial showed that this business also was a failure due to customer complaints of non-receipt and partial-receipt of merchandise. Many, if not all, of the customers obtained refunds from either their credit card companies or from Foster. As a result of her dealings with Levy, Foster suffered losses from these businesses.

At and around this same time and in the years following, Levy set up several online businesses of her own to sell women's fashion clothing. In doing so, Levy set up a mailbox in another state to serve as the address for her businesses and listed fictitious names on the websites. In October 2005, Stacy Armstrong ordered a number of items from one of Levy's websites. Armstrong tendered payment by check. Levy never completed Armstrong's order and instead sent a significantly smaller number of non-conforming goods while promising a refund for the undelivered portion of the order. Levy, however, never provided a refund to Armstrong.

Annamarie Siegler also placed an order on one of Levy's websites and transferred payment into Levy's account. Siegler never received her merchandise, despite assurances by Levy that it had been sent. In retaliation, Siegler placed the same order repeatedly on Levy's site, costing Levy a transaction fee each time. In response to this, Levy drafted a fraudulent summons and complaint purporting to be official court documents filed in state court in California and sent them to Siegler. Levy used a fictitious law firm name that she previously had used in drafting letters to various online fora.

In December 2005, Special Agent Ryman of the Federal Bureau of Investigation ("FBI") placed an order from Levy's site using an undercover identity. Ryman tendered payment to Levy and Levy, using a fictitious name, assured Ryman that the merchandise had been shipped. Levy never sent any of the items that Ryman ordered. After this incident, FBI agents obtained a warrant to search Levy's home. While executing the search warrant, Ryman and another agent interviewed Levy. Levy admitted to the agents that she knew what she had been doing was "criminal" and that the majority of the orders that were placed on her websites remained unfulfilled.

At trial, the Government introduced three charts created by Ryman and summarizing records that also had been introduced. The first was Government Exhibit 45, a bar graph

4

showing a breakdown of Foster's income and losses from her ventures with Levy. Ryman testified that this exhibit was based on Foster's bank records and Government Exhibit 46, records of the credit card charge-backs for customers who received refunds for non-receipt of merchandise. The second was Government Exhibit 30, a chart listing the names and purported loss amounts of customers who had complained about Levy's businesses on an internet website called the Internet Crime Complaint Center ("IC3"). The final chart was Government Exhibit 2, a bar graph depicting the total amount of deposits into, and purchases of merchandise from, Levy's account. Ryman testified that he prepared this chart by reviewing Levy's bank and credit card records that previously had been introduced into evidence.

In addition, the Government introduced Exhibit 31, a collection of emails from Levy's home computer obtained during the search of her house. This exhibit contained emails from disgruntled customers complaining about partial and non-receipt of merchandise, and Levy's responses to those customers. The district court admitted each of these exhibits over Levy's objections.

The jury convicted Levy of all seven counts. At sentencing, the Government produced a chart, again compiled by Ryman, listing eighty-two victims and $168,300.77 in losses. Ryman testified that he generated this chart by first compiling

5

a list of victims from the IC3 website, then identifying the victims' email addresses from Levy's computer, and attempting to contact the victims to verify their complaints. Ryman admitted that he was only able to speak with fifteen of these victims. Based on Ryman's testimony, the district court found by a preponderance of the evidence that there were at least eighty-two victims of Levy's crimes, who suffered $168,300.77 in losses.

The court therefore enhanced Levy's offense level under the Sentencing Guidelines by four levels based on the number of victims and by ten levels based on the loss figure. See U.S. Sentencing Guidelines Manual ("USSG") § 2B1.1(b)(1)(F), (b)(2)(B) (2007). Because Levy's criminal history placed her in Category I, the advisory Sentencing Guidelines range was forty-six to fifty-seven months' imprisonment. After considering the 18 U.S.C. § 3553(a) (2006) factors, the district court sentenced Levy to forty-six months' imprisonment. The district court also ordered Levy to pay restitution in the loss amount pursuant to 18 U.S.C. § 3663A (2006).

II.

Levy first argues that the district court erred in admitting Government Exhibits 2, 30, 31, 45, and 46 into evidence. This court reviews a district court's determination

6

of the admissibility of evidence for abuse of discretion. United States v. Hedgepeth, 418 F.3d 411, 418-19 (4th Cir. 2005). "An abuse of discretion occurs only when a trial court has acted 'arbitrarily' or 'irrationally' in admitting evidence, when a court has failed to consider 'judicially recognized factors constraining its exercise' of discretion, or when it has relied on 'erroneous factual or legal premises.'" Id. at 419 (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990); James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993)). In addition, "'[a]ny error in [the] admission or exclusion [of evidence] is subject to the harmless error test.'" United States v. Loayza, 107 F.3d 257, 263 (4th Cir. 1997) (quoting United States v. Francisco, 35 F.3d 116, 118 (4th Cir. 1994)).

Government Exhibits 2, 30, and 45 are summary charts and graphs. Levy objects to their admission on several grounds, including relevance, lack of advance notice, inaccuracy, and hearsay, and argues that these charts did not assist the jury and were unduly prejudicial. "Summary charts are admissible if they aid the jury in ascertaining the truth." Loayza, 107 F.3d at 264 (citing United States v. Johnson, 54 F.3d 1150, 1159 (4th Cir. 1995)). The district court should consider "[t]he complexity and length of the case as well as the numbers of witnesses and exhibits" in determining admissibility. Id. In addition, the court can dispel any prejudice to the defendant in

7

the admission of charts and summaries by giving the defendant the opportunity to cross-examine the witness who prepared the exhibits and giving a cautionary instruction to the jury.  Id. Applying these standards, we have reviewed the record and find no error in the admission of these charts and summaries.

Levy also challenges the court's admission of Government Exhibit 46 on the grounds that it contains inadmissible hearsay and that she received it for the first time at trial.  However, these records were not hearsay but were admissible as business records under Fed. R. Evid. 803(6) and 902(11).  In addition, Levy did not object to the lack of notice in the district court and therefore waived appellate review of this claim.  See Fed. R. Evid. 103; United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983).

Finally, Levy objects to the admission of Government Exhibit 31 on the ground that the emails from the customers were hearsay and that their admission was highly prejudicial and violated the spirit of the Confrontation Clause of the Sixth Amendment and Crawford v. Washington, 541 U.S. 36 (2004). However, these emails were not hearsay because they were not offered for the truth of the matter asserted.  Rather, they were offered to place the admissions by Levy in her response emails into context and to show Levy's intent, lack of mistake, and notice.  The district court properly instructed the jury that

these emails were not offered for their truth.  Therefore, the admission of this exhibit did not violate the Confrontation Clause.  See id. at 59 n.9 (explaining that Confrontation Clause does not bar use of testimonial statements for purposes other than establishing truth of the matter asserted).

## III.

Levy next contends that the district court inadequately instructed the jury on the element of intent to defraud.  "'The decision to give or not to give a jury instruction is reviewed for an abuse of discretion.'"  United States v. Hurwitz, 459 F.3d 463, 474 (4th Cir. 2006) (quoting United States v. Moye, 454 F.3d 390, 398 (4th Cir. 2006) (en banc)).  Furthermore, "'[this court] review[s] a jury instruction to determine whether, taken as a whole, the instruction fairly states the controlling law.'"  Id. (quoting Moye, 454 F.3d at 398).

While Levy argues that the district court's instruction to the jury was inadequate, Levy fails to specify in what way the instruction misstated the controlling law.  Levy has thus failed to demonstrate that the district court abused its discretion in instructing the jury on intent to defraud.

IV.

Levy argues that the district court erroneously treated the Sentencing Guidelines as mandatory. Appellate courts review a sentence imposed by a district court for reasonableness, applying an abuse of discretion standard. Gall v. United States, 128 S. Ct. 586, 597 (2007); United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). In so doing, the court "first examines the sentence for significant procedural errors," including: "'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . .'" Pauley, 511 F.3d at 473 (quoting Gall, 128 S. Ct. at 597). If there are no procedural errors, the appellate court then considers the substantive reasonableness of the sentence. Gall, 128 S. Ct. at 597.

In sentencing Levy, the district court stated that it was "bound by these [S]entencing [G]uidelines, except to the extent that [it could] depart upwards or downwards in any given case" and expressed that "[it did not] feel that [it could] depart downwards in this case and [had] to be within the [G]uideline range." We agree that the district court treated the Guidelines as mandatory and therefore vacate the sentence

and remand for resentencing.[*]  See Covington v. United States, 129 S. Ct. 1612 (2009) (remanding for resentencing in light of Nelson v. United States, 555 U.S. ___, 129 S. Ct. 890 (2009), because the district court treated Guidelines as mandatory).

V.

Levy next contends that the district court erroneously increased the applicable advisory Guidelines range based on unreliable hearsay.  Specifically, Levy argues that the Government failed to provide reliable evidence of the number of victims of Levy's scheme and the amount of loss suffered by those victims.  This court reviews a district court's factual determination of the amount of loss for clear error.  United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003).  The court need only make these determinations by a preponderance of the evidence and "need only make a reasonable estimate of the loss, given the available information."  Id. (citing USSG § 2F1.1 cmt. n.9 (2000)).

Here, Ryman testified to his methods for determining the victims of Levy's crimes.  Ryman testified that he consulted the victims listed on the IC3 website and confirmed their status

_____

[*] In so doing, we express no opinion on the reasonableness of the sentence imposed by the district court.

11

as customers by searching through the email addresses found on Levy's computer. We conclude that the district court made a reasonable estimate of the loss and determination of the number of victims based on Ryman's testimony.

## VI.

Finally, Levy contends that the district court's order of restitution was unlawful because the Mandatory Victims Restitution Act, 18 U.S.C. §§ 3663A-3664 (2006), does not authorize the court to order a defendant to pay restitution to a person who was not a victim of the offense. Levy argues that the eighty-two individuals to whom restitution was ordered were not victims within the Act.

This court reviews a restitution order for abuse of discretion. United States v. Hoyle, 33 F.3d 415, 520 (4th Cir. 1994). Under § 3663A(a) and (c), the district court must order that the defendant make restitution to the victim of an offense committed by fraud. The term "victim" is defined in subsection 3663A(a)(2). We conclude the district court did not err in finding that the eighty-two individuals to whom restitution was ordered were "victims" as defined by the Act. Therefore, the district court committed no error in ordering restitution to those victims.

12

## VII.

In sum, we conclude that the district court committed no error in its conduct of the trial but erred in treating the Guidelines as mandatory in sentencing Levy. Accordingly, we affirm Levy's convictions, but vacate the sentence and remand for resentencing. We also deny Levy's renewed motion for release pending appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED