**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5165**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MICHAEL O. WATKINS,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, Senior District Judge. (4:08-cr-00123-RGD-TEM-4)

Submitted: July 9, 2010           Decided: July 20, 2010

Before TRAXLER, Chief Judge, and MOTZ and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James S. Ellenson, Newport News, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Timothy R. Murphy, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia; Matthew J. Sutton, Second Year Law Student, WILLIAM AND MARY LAW SCHOOL, Williamsburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael O. Watkins appeals his convictions relating to the robbery of a gas station with his accomplice, Roderick Spratley. Finding no error, we affirm.

I.

Watkins and Spratley robbed the Solo gas station in Hampton, Virginia on the afternoon of July 25, 2008. A multi-camera surveillance system inside the store recorded the robbery, and the recordings were admitted into evidence at Watkins's trial. In addition, Spratley and three other eyewitnesses to the crime testified against Watkins regarding the events of that day.

Spratley, who pleaded guilty to multiple crimes relating to the robbery, testified that the night before the robbery, Watkins initiated a conversation with him in which Watkins stated that he knew Spratley was "on the run" as the result of having committed three prior robberies. J.A. 297. Watkins also knew Spratley had a gun because Watkins had seen the gun that night. Watkins stated that he needed some money, and he offered to assist Spratley the next time he committed a robbery. The following afternoon, Spratley told Watkins that he would be willing to work with Watkins if they could get transportation. Watkins promptly made the necessary arrangements.

2

Suzanne Peters, an acquaintance of Watkins's, testified that Watkins called her on July 25, 2008, and persuaded her, without revealing their criminal intentions, to pick him and Spratley up in Portsmouth and drive them to Watkins's uncle's house in Hampton in exchange for $30. After picking the men up that afternoon, but before leaving Portsmouth, Peters stopped for gas at a convenience store. While she was in the store, Watkins and Spratley decided that their target would be the Solo gas station in Hampton.

Spratley testified concerning how they committed the robbery. When they arrived at the Solo gas station, the men asked Peters to park at an apartment complex near the gas station. Spratley got out of the car to "observe the store," leaving his handgun, a .38 caliber revolver, in the car. J.A. 303. Taking the gun from the car, Watkins walked toward the store, asked employees a question at the side window, and met Spratley in front of the store. After Watkins told Spratley he had his gun, the two men entered the store. They walked to the back and Watkins surreptitiously handed Spratley the gun. Because there were several customers in the store, however, Spratley and Watkins did not commence the robbery right away. While they waited, Watkins removed a six-pack of beer and a bottle of wine from the store's refrigerator, hiding them inside his pants.

3

According to the testimony of the store manager, Ashok Patel, in a minute or two, Watkins gave a visible hand signal to Spratley apparently indicating that Spratley should start the robbery. Spratley then advanced to the counter and asked to buy a cigar, prompting cashier Debra Sechrist to open the register. When she did so, Spratley jumped over the counter, brandished his handgun, and said, "Give me the money." J.A. 95 (internal quotation marks omitted). Moving away from the register, Sechrist proceeded toward the open end of the counter; however, Watkins went behind the counter himself, cutting her off and pushing her back toward Patel. Spratley removed the money from the store's cash register.

During the robbery, one customer, Timothy Tooley, remained in the store. After Watkins restrained Sechrist, Spratley told Tooley not to leave and instructed Watkins to get his cell phone. Watkins then approached Tooley and demanded his phone. When Tooley refused, Watkins threatened to "pull [his] piece." J.A. 74 (internal quotation marks omitted). After Watkins repeated his demand several times, Spratley exited through the gas station window and Watkins left the store quickly as well. The two then returned to Peters's car and drove off.

When a Hampton Police Department officer responding to the robbery subsequently attempted to execute a traffic stop of Peters's vehicle, Peters led the police on a high-speed chase,

4

which ended when she lost control of her car and drove off the road. After exiting the vehicle and attempting to flee on foot, Watkins was apprehended. A search of his person incident to his arrest revealed nearly $300.

Watkins was eventually charged in a superseding indictment with one count each of obstruction of interstate commerce by robbery in violation of 18 U.S.C.A. § 1951 (West 2000), conspiracy to possess and brandish a firearm in furtherance of a crime of violence in violation of 18 U.S.C.A. § 924(o) (West Supp. 2010), and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C.A. § 924(c) (West Supp. 2010).

At Watkins's trial, the parties disagreed regarding the admissibility of certain government exhibits derived from video taken by the store surveillance system. Karyn Buhrman, a forensic specialist with the Hampton Police Division Crime Scene Unit, testified that she went to the store the day after the robbery, viewed the video recordings from the store surveillance system, and downloaded the recordings from six of the cameras to a thumb drive. She then took the data back to her crime screen unit, where she downloaded it onto the computer used for storing photos and videos. Eventually, copies were provided to the government and defense counsel. Buhrman testified that the government's video exhibits contained exactly the same video

5

that she saw when she watched the video at the scene the day after the robbery, with the caveat that two of the exhibits omitted material in the middle of the video that did not show any activity. Tooley, Patel, and Spratley also testified that the videos they viewed accurately reflected the events that occurred on the day in question. When the government moved to admit the videos into evidence, defense counsel objected, contending that Buhrman's testimony showed that the tapes were not accurate. Finding that the tapes were accurate, the district court overruled the objection.

Watkins testified in his own defense. He maintained that he had no idea prior to the robbery that Spratley was going to rob the store and denied any participation in the robbery. He also stated that the government's video exhibits did not accurately reflect the events that occurred that day.

After the trial, Watkins was convicted on all counts. He was sentenced to 170 months' imprisonment on the Hobbs Act count, 170 months on the conspiracy count, to be served concurrently, and 84 months on the § 924(c) count, to be served consecutively to the other two terms.

II.

On appeal, Watkins first challenges the sufficiency of the evidence supporting his three convictions, contending that proof

6

of each charged offense required showing that he acted in concert with Spratley regarding the robbery but arguing that the government failed to offer sufficient evidence on that point. We disagree.

We must affirm the jury's verdict against a sufficiency challenge "if there is substantial evidence, taking the view most favorable to the Government, to support [it]." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks omitted). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We conclude that the evidence of Watkins's participation was sufficient with regard to each of the charged offenses.

## A.

To prove a Hobbs Act violation under 18 U.S.C. § 1951, the government must establish two elements: (1) commission of the underlying robbery or extortion crime; and (2) an effect on interstate commerce. See United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003). "A defendant is guilty of aiding and abetting if he has knowingly associated himself with and participated in the criminal venture." Burgos, 94 F.3d at 873 (internal quotation marks omitted); see 18 U.S.C.A. § 2(a) (West

7

2000) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). To prove that association, the government need only establish that the defendant was "cognizant of the principal's criminal intent and the lawlessness of his activity." Burgos, 94 F.3d at 873. "[P]articipation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about that result." United States v. Arrington, 719 F.2d 701, 705 (4th Cir. 1983) (internal quotation marks omitted).

Watkins's sufficiency challenge concerns only the first Hobbs Act element, and we conclude that the evidence at trial was sufficient to establish this element. Spratley testified that Watkins brought Spratley's gun into the store and gave it to him.[*] The evidence also tended to show that Watkins took action to prevent those in the store from calling the police. The store video shows that when Spratley jumped over the counter, Sechrist began to move away from the register as if she

---

[*] The government's video exhibits neither confirm nor contradict this testimony. Exhibits 2a and 8 show a few seconds where the two men are next to each other in the back of the store and Watkins could be passing Spratley his gun, but the men are partially obscured from view at the critical time in both videos.

were attempting to get out from behind the counter. Watkins quickly came around the counter, however, and pushed her back toward Patel. Tooley further testified that Watkins, acting on Spratley's instruction, repeatedly demanded that Tooley give Watkins his cell phone. The government also presented testimony from a former cellmate of Watkins's who claimed that Watkins admitted to planning to rob the store with Spratley and then executing their plan.

B.

The evidence was also sufficient to prove a violation of 18 U.S.C.A. § 924(o). To prove such a violation, the government must show that the defendant conspired to commit a § 924(c) offense. "It is not necessary to prove a formal agreement to establish a conspiracy in violation of federal law; a tacit or mutual understanding among or between the parties will suffice." United States v. DePew, 932 F.2d 324, 326 (4th Cir. 1991). The government may establish a violation of § 924(c) by showing that a defendant "during and in relation to any crime of violence or drug trafficking crime . . . use[d] or carrie[d] a firearm," 18 U.S.C.A. § 924(c)(1)(A), or that the defendant possessed a firearm "in furtherance of any such crime." Id.

Spratley testified that the night before the robbery, Watkins had offered to assist in Spratley's next robbery and that Watkins arranged transportation for the men for a robbery

9

the next day.  Spratley testified that Watkins knew Spratley had a gun because Watkins saw the gun the night before the robbery and that while the two never explicitly agreed that Spratley would use the gun to rob the store, that point was implicit in their discussions because Spratley was "not going to rob it with [his] fingers."  J.A. 305.  Indeed, Watkins's action in bringing Spratley his gun in the store constituted an overt act in furtherance of the conspiracy.

C.

Finally, the evidence was sufficient to prove the substantive § 924(c) violation.  Spratley's testimony that Watkins carried Spratley's gun into the store and gave it to Spratley to use in the robbery was certainly sufficient in that regard.

III.

Watkins also argues that the district court erred in admitting the videos of the crime scene over his objection that the tapes were altered and unreliable.  In support of his claim, Watkins relies on Buhrman's testimony that the tapes had been edited and the fact that there was a discrepancy in the time stamps between the store video and the time stamps in the video taken from the police cars that pursued Peters.  We review a district court's decision concerning admissibility of evidence

10

for an abuse of discretion, which we will not find unless the decision was "arbitrary and irrational." United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002). We conclude that the district court was well within its discretion here.

The time stamps' discrepancy in no way undercuts the district court's determination that the tapes accurately depicted the events on the day of the crime. That the time stamp on the store surveillance video was slightly different from that on the police car video at most shows that the time stamp on the store video was not correct. (Patel noted in his testimony that there was "always a difference between the computer clock [that time stamped the store video] and [the store's] regular clock." J.A. 134.) But, the exact time of the events in question here was not a material issue in this case. Moreover, Buhrman testified that she downloaded the videos personally from the store's camera system the day after the robbery. And, several witnesses testified that the store videotapes accurately depicted the events that occurred on the day of the robbery. As Watkins presented the district court with no reason to doubt the reliability of the footage contained in the government's exhibits, the court was well within its discretion in admitting them.

11

IV.

In sum, because we find no error, we affirm Watkins's convictions.

AFFIRMED