UNITED STATES of America, Appellee,

v.

Roger T. LING, II, Appellant.

No. 76–1728.

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1978.

Decided August 30, 1978.

Stanley S. Cohen, Baltimore, Md. (John B. McClellan, Baltimore, Md., Glen A. Jacobson, Second Year Law Student; Stanley H. Needleman, Baltimore, Md., on brief), for appellant.

Marsha A. Ostrer, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., John F. Hyland, Jr., Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and HALL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Roger T. Ling, II, was convicted of conspiring to violate the federal narcotics laws, 21 U.S.C. § 846, and manufacturing a Schedule I non-narcotic controlled substance, 21 U.S.C. § 841(a)(1).

The facts underlying Ling's convictions are not disputed and appellant does not challenge the sufficiency of the evidence. Ling admitted that he agreed to manufacture an illegal drug known as DMT (dimethyltryptamine) for the "Pagans," a motorcycle gang. He was not a member of the gang, but apparently became associated with them through his sale of Nazi memorabilia to gang members. Ling purchased the chemicals and equipment necessary to produce the drug from Tilley Chemical Company in Baltimore, Maryland. Upon receiving Ling's orders, an employee at Tilley recognized the chemicals as those required for the manufacture of DMT and the company notified the Drug Enforcement Administration of the United States Department of Justice (DEA). DEA agents placed Ling under surveillance and monitored his transactions at Tilley. They followed him until he went to a secluded farm-

house where a shed had been set up as a clandestine chemical laboratory. Ling and several co-conspirators were arrested after they left the farm the following morning and a beaker containing an immediate chemical precursor of DMT was seized.

The main issue at Ling's trial was the credibility of the defendant. Ling took the witness stand in his own defense and testified that although he did participate in the manufacture of the drug, he intended to sabotage that manufacture before it was completed. Evidence adduced at trial showed that Ling was not popular with the Pagans and, in fact, his apartment had been burglarized by them and he had been severely beaten by them. On direct examination Ling admitted that he had an extensive gun collection and that he sometimes carried a gun, but he denied ever shooting anyone or using his guns to threaten anyone. Ling also testified that he did not drink alcoholic beverages because of an allergy. However, he did admit on direct examination that he did "drink on occasion."

On cross-examination, in an attempt to impeach defendant's credibility, the prosecutor asked Ling if he ever fired any of his guns on a public street and Ling answered "never." Based upon Ling's denial, the government introduced rebuttal testimony from Officer McKenny, a Baltimore police officer, who testified that he had arrested Ling for discharging a firearm in a public place, possession of a handgun and driving while under the influence of alcohol. According to Officer McKenny's testimony, Ling was given a breathalyzer test at the time of his arrest on these charges which test indicated a .04 reading and the drunk driving charge was subsequently dismissed.[1] Officer McKenny also testified that Ling at all times denied firing a gun, the charge of discharging a firearm was dismissed and defendant received "probation before judgment" as to the charge of possession of a handgun—a disposition that carries no penalty and is not considered a conviction under Maryland law.

Defense counsel interposed objections before, during and after Officer McKenny's testimony on the grounds that the prosecution was interjecting a collateral and irrelevant issue into the case which was highly prejudicial to the defendant. The prosecutor argued that the police officer's testimony was relevant and properly admissible because it bore directly on defendant's credibility by indicating prior inconsistent statements or conduct.

In an attempt to lessen the effect of Officer McKenny's testimony, defense counsel requested that the trial judge instruct the jury as to the legal significance of Maryland's "probation before judgment" procedure. The judge refused the requested instruction.

Ling argues on appeal that Officer McKenny's rebuttal testimony constituted inadmissible collateral evidence and the trial judge compounded the error by refusing to give the requested instruction. We think the judgments of conviction should be set aside and Ling awarded a new trial.

Ling was charged with a violation of federal drug laws and not with a firearms violation. Nevertheless, government counsel made numerous references during the government's case in chief to certain guns that were seized at the time of Ling's arrest or were owned by Ling, the seized weapons were admitted into evidence and the government attempted to impeach the credibility of the defendant with his alleged inconsistent statements or conduct concerning his misuse of firearms. The prosecutor admittedly and purposely interjected the firearm issue into the case in an effort to discredit Ling.

█ It is a well-settled rule that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility. However, when a defendant is cross-examined for the purpose of impeach-

---

1. Officer McKenny testified that in Maryland the intoxication level is .15 and the level of impairment is .10. (Tr. 791) *See* Md. [Cts. & Jud.Proc.] Code Ann. § 10–307 (1974).

ing his credibility by proof of specific acts of past misconduct not the subject of a conviction, the examiner must be content with the witness' answer. The examiner may not, over objection, produce independent proof to show the falsity of such answer. This court has summarized the no extrinsic evidence rule by stating "the interrogator is bound by [the witness'] answers and may not contradict him." *United States v. Whiting,* 311 F.2d 191, 196 (4 Cir. 1962), *cert. denied,* 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766, *rehearing denied,* 372 U.S. 972, 83 S.Ct. 1089, 10 L.Ed.2d 136 (1963). Although the cross-examiner may continue to press the defendant for an admission, he cannot call other witnesses to prove the misconduct after defendant's denial. In the instant case the prosecutor should have accepted Ling's answer that he never fired a gun on a public street and should not have attempted to impeach defendant's credibility on this collateral issue by use of the police officer's rebuttal testimony.[2]

▉ It is a general rule that arrest without more does not impeach the integrity nor impair the credibility of a witness because "[i]t happens to the innocent as well as the guilty." *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948). This rule is based upon a clear recognition of the fact that the probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame or prejudice the jury against the defendant that "total and complete exclusion is required in order that the right to trial by a fair and impartial jury may not be impaired." *United States v. Pennix,* 313 F.2d 524, 529 (4 Cir. 1963).

▉ Furthermore, in the instant case the police officer's rebuttal testimony was not probative of the facts for which it was offered—it was not evidence of either prior inconsistent statements or conduct. Ling always insisted that the sounds Officer McKenny heard were from his *car backfiring* as he turned a street corner and that he never fired his gun on the morning in question. Officer McKenny admitted at trial that he did not see Ling fire a gun and that he merely heard several reports that *sounded* like gunfire. Because Ling had a gun under the front seat of his car when the police officer stopped him and three bullets were missing from the gun, Officer McKenny testified that he felt justified in charging Ling with the gun violations. As to the drunk driving charge, Ling admitted on direct examination that he drank "on occasion." Thus, the arrest incident was *not* inconsistent with Ling's trial testimony.

The government insists that, even admitting that the police officer's rebuttal testimony was improper, it was not so prejudicial to the defendant as to constitute reversible error. But it is clear that at trial the primary issue for jury determination

---

2. Although Ling's trial took place before the effective date of the new Federal Rules of Evidence, the new Rules would also have prohibited the introduction of the police officer's rebuttal testimony. Rule 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The Advisory Committee's Note explains 608(b) as follows:

> In conformity with Rule 405, which forecloses use of evidence of specific incidents as proof in chief of character unless character is an issue in the case, the present rule generally bars evidence of specific instances of conduct of a witness for the purpose of attacking or supporting his credibility. There are, however, two exceptions: (1) specific instances are provable when they have been the subject of criminal conviction, and (2) specific instances may be inquired into on cross-examination of the principal witness or of a witness giving an opinion of his character for truthfulness.

*See* 3 Weinstein and Berger, Commentary on Rules of Evidence ¶ 608[05].

was the conflict between the testimony of Ling as to his intent, on the one hand, and the government's proof of his actions, on the other. Thus, the credibility of the defendant was sharply brought into focus and any error which reflected upon or tended to impeach the credibility of the defendant may not be said to be insubstantial. When in the prosecution of a defendant, counsel for the government introduces extrinsic evidence of defendant's misconduct, the only purpose of which is to impeach the defendant's credibility and prejudice the jury against him, the government, on appeal, will not ordinarily contend that the methods which were used did not have the effect which they were obviously intended to have. *United States v. Pennix, supra* at 531.

Of course, the trial judge has wide discretion in determining whether the probative value of evidence is outweighed by its prejudicial character. *United States v. Mastrototaro,* 455 F.2d 802 (4 Cir.), *cert. denied,* 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 666 (1972). Nevertheless, in the instant case the prejudicial character of the evidence in question *far outweighs* any possible probative value to the prosecution and we view the admission of the evidence concerning proof of Ling's prior arrest as reversible error. *See United States v. Cole,* 491 F.2d 1276, 1279 (4 Cir. 1974); *United States v. Fisher,* 477 F.2d 300, 303 n. 4 (4 Cir. 1973). There was no link between the rebuttal testimony, admitted over objection, and an element of the crime charged. The police officer's testimony was not necessary in establishing the government's case against Ling as to the charged offense, *United States v. DiZenzo,* 500 F.2d 263 (4 Cir. 1974), and the government's case in chief would not have been adversely affected if Ling's denial of his misuse of firearms had been allowed to stand without challenge, *United States v. Rogers,* 549 F.2d 490, 497 (8 Cir. 1976), because of the direct evidence of Ling's commission of the offense for which he was on trial.

*United States v. Blackshire,* 538 F.2d 569 (4 Cir. 1976), recognizes the very evidentiary principle involved in the instant case. In that case we reversed Blackshire's conviction on other grounds but stated that extraneous evidence of misconduct introduced to impeach defendant's testimony at the first trial should not be introduced at his retrial.

On direct examination, Blackshire narrowly confined his testimony to the charges of the indictment. On cross-examination the court allowed the government to elicit an admission that he had once used mescaline. He denied, however, that when he was arrested agents found some mescaline tablets in his shoe. The government then introduced rebuttal evidence that an agent had indeed found a package of tablets in Blackshire's shoe and that Blackshire had identified them as mescaline. . . .

The district judge cautioned the jury that this evidence was not any indication of Blackshire's guilt, but he admitted it for the purpose of testing Blackshire's credibility. This, we believe, was error that should not be repeated on retrial. Blackshire's testimony that he had used mescaline was not useful to impugn his credibility. Rather, it served merely to prejudice the jury. The rebuttal testimony violated the rule, long recognized in this circuit, that extraneous evidence of misconduct cannot be introduced to impeach a witness.

538 F.2d at 572 (citations omitted). *See United States v. Morlang,* 531 F.2d 183, 190 (4 Cir. 1975).

The error in the instant case was compounded when the district court refused to instruct the jury as to the legal significance of Maryland's "probation before judgment" procedure. Although Officer McKenny testified that "probation before judgment" carried "no penalty," without the requested instruction the jury might have inferred that Ling had been *convicted* of the gun charge and was given probation.

It is not our function to determine the guilt or innocence of the defendant or to speculate upon probable reconviction in the event of a new trial. However, we cannot say, with fair assurance, that the

verdict of guilty was not substantially influenced by the error. *United States v. Pennix, supra* at 531. The introduction of the police officer's rebuttal testimony violated well-established rules of evidence and interjected an inflammatory collateral issue into Ling's trial. We conclude, in all fairness, that the appellant is entitled to a new trial.

*Reversed and new trial awarded.*