UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4136

JA JA CHIMAIHE DIKE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CR-97-20-CCB)

Submitted: November 10, 1998

Decided: December 17, 1998

Before ERVIN and WILKINS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael D. Montemarano, Baltimore, Maryland, for Appellant. Lynne
A. Battaglia, United States Attorney, Ira L. Oring, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

A jury convicted Ja Ja Chimaihe Dike of one count of conspiracy to defraud the United States in violation of 18 U.S.C.A. § 371 (West Supp. 1998), based upon a scheme to engage in food stamp fraud. Dike challenges his conviction asserting that: (1) a motion for judgment of acquittal should have been granted; (2) exculpatory evidence was improperly excluded; (3) the Government improperly used certain documents not admitted in evidence during his cross-examination; and (4) the Government illegally provided "things of value" to persons in exchange for testimony. Finding no reversible error, we affirm.

In June 1993, Eddy Dikeh opened the Fremont Grocery, a small convenience store in Baltimore, Maryland. Dike was a clerk at the store. The store was equipped with a point-of-sale terminal that could electronically access a food stamp recipient's account and transfer funds to the store. Maryland food stamp recipients receive their benefits electronically with the use of an electronics benefit transfer card ("EBT"). Recipients swipe the card through a terminal and enter a PIN number. The sale amount is entered and funds are transferred to the store. A receipt is printed which contains the statement: "Do not dispense cash."

In spite of that statement, recipients at the Fremont Grocery often received cash in exchange for double the benefits. For instance, if a recipient wanted $20, his account was charged $40, with the store collecting the difference. The money given to the recipient was either wrapped in a receipt or placed in a paper bag. In addition, the recipient was obligated to make a purchase of several dollars and given a complimentary newspaper so that he would not leave the store empty-handed.

Dike was observed dispensing cash to recipients in exchange for benefits. However, he would not give cash to recipients he did not recognize. To avoid this obstacle, "runners" would act as middle-men between unknown recipients and Dike. Sometimes the runner did not know what grocery items to purchase in addition to the cash transac-

tion. Dike would randomly take items off the shelf to give to the runner. On other occasions, Dike asked Leroy Lockley, a friend of Dikeh, if he recognized the recipient. Dike also ceased making transactions if police cars or other unknown cars were in the neighborhood.

Dike testified in his own defense, denying that he knew what he was doing was unauthorized. He testified that Dikeh instructed him to exchange money for benefits. Dike stated that he believed the EBT cards were like credit cards and did not think it unusual that recipients had two dollars deducted from their accounts for every dollar received. He also claimed that he did not understand the significance of the statement "Do not dispense cash." He denied knowledge of the use of runners. He also denied dealing with unknown recipients differently than others or ceasing transactions when police vehicles were in the neighborhood.

On appeal, Dike contends that he was entitled to a judgment of acquittal because the Government's evidence did not establish that he knew the money-for-benefits transactions were unauthorized. When reviewing a denial of a motion for judgment of acquittal, we inquire whether, viewing the evidence in the light most favorable to the government, the evidence was sufficient to sustain a finding of guilt beyond a reasonable doubt. See United States v. Romer, 148 F.3d 359, 370 (4th Cir. 1998). In Liparota v. United States, 471 U.S. 419 (1985), the Court held that in proving a violation of a food stamp statute, the government must prove beyond a reasonable doubt that the defendant knew that his action was unauthorized. However, the burden is not a heavy one. According to Liparota :

> the Government need not show that [the defendant] had knowledge of specific regulations governing food stamp acquisition or possession. Nor must the Government introduce any extraordinary evidence that would conclusively demonstrate [the defendant's] state of mind. Rather, as in any other criminal prosecution requiring mens rea, the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew that his conduct was unauthorized or illegal.

3

Id. at 434.

It is the jury's role to determine the credibility of witnesses. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). In spite of Dike's testimony to the contrary, we find there is sufficient evidence to sustain the conviction. Evidence of intent will almost always be circumstantial. See United States v. Brooks , 111 F.3d 365, 372 (4th Cir. 1997). Furthermore, "[f]raudulent intent may be established by circumstantial evidence and by inferences deduced from facts and situations." United States v. Celesia, 945 F.2d 756, 759 (4th Cir. 1991) (quotation omitted).

Dike was aware of the printed prohibition against dispensing cash at the bottom of each receipt. He was wary of conducting transactions with persons he did not recognize. He made sure recipients left the store with something in addition to the money. He ceased conducting transactions when police were in the neighborhood. Clearly, there was sufficient evidence showing that Dike knew that what he was doing was unauthorized.

Dike contends the court erred in not permitting a letter purportedly written by Dikeh into evidence. According to Dike, the letter should have been admitted under Fed. R. Evid. 804(b)(3), as a statement against penal interest.* In the letter, Dikeh states that he was responsible for "any thing [sic] that happened in the store" and that prosecuting Dike was a "mistake." Dikeh also claimed in the letter that he was going to commit suicide.

When the offered hearsay statement exposes the declarant to criminal liability and is offered to exculpate the defendant, as in the instant case, the statement "is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). The party offering the statement bears the formidable burden of meeting the requirements of Rule 804(b)(3), and the court's decision is reviewed for abuse of discretion. See United States v. Lowe, 65 F.3d 1137, 1145 (4th Cir. 1995) (quotation omitted).

_____

*Dikeh absconded and was unavailable to testify at trial.

4

The court found that it was doubtful that the letter was exculpatory as far as Dike was concerned. Although Dikeh assumed responsibility for actions that went on in the store, even if Dike was merely following instructions, he was still criminally responsible if he acted knowingly in participating in the fraud. The court also doubted the letter's trustworthiness, noting that it contained several inconsistencies, including a threatening statement attributed to the prosecuting attorney which was refuted by a defense attorney present when the statement was allegedly made. Dikeh's threat to commit suicide was also not credible because there was evidence he was planning to flee to Nigeria when the letter was written. Furthermore, Dikeh's fear of a life sentence, as expressed in the letter, was unfounded in light of evidence that he was informed that he faced a sentence no greater than twenty-seven months. Because there was a lack of corroborating evidence tending to show that the letter was trustworthy, we find the court did not abuse its discretion in not admitting the letter into evidence. See United States v. Bumpass, 60 F.3d 1099, 1102-03 (4th Cir. 1995) (corroborating circumstances must clearly indicate the trustworthiness of the statement).

Next, Dike contends the Government improperly used a series of documents to cross-examine him, which the court subsequently refused to admit into evidence. The documents were purported to be a description prepared by Dikeh of how one might apply for political asylum. On direct examination, Dike described his efforts in applying for asylum. Dike's asylum application detailed alleged persecution by the Nigerian government. On cross-examination, over defense counsel's objection, the Government presented the documents prepared by Dikeh. Dikeh's documents described facts similar to those set forth in Dike's own asylum application and included supporting documentation that could be used to support a fraudulent asylum application. Dike admitted that Dikeh assisted him in filing the asylum application, but denied filing a false application. The Government later sought to admit the documents into evidence on the basis that it established a relationship between Dike and Dikeh. The court refused to admit the document into evidence, finding that its probative value was outweighed by the possibility of confusion. See Fed. R. Evid. 403.

The Government's contention is that Dike's credibility was a proper subject on cross-examination. The court's ruling is reviewed

5

for abuse of discretion. See United States v. McMillon, 14 F.3d 948, 955 (4th Cir. 1994). It is well established that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility. See United States v. Ling, 581 F.2d 1118, 1120 (4th Cir. 1978).

We fail to find error with the Government's cross-examination. Dike testified on direct examination about applying for asylum. Dike later identified Dikeh's handwriting on one of the documents. He, however, was free to admit or deny the inference suggested by the documents, i.e., that Dikeh assisted him in filing a false asylum application. The Government did not read any statements from the documents in an attempt to put clearly inadmissible hearsay statements before the jury under the guise of impeachment. See United States v. Hall, 989 F.2d 711, 716 (4th Cir. 1993). Because the documents were evidence of the Government's good-faith belief that Dike had previously engaged in fraudulent conduct, we find that the court did not abuse its discretion in permitting the cross-examination. See United States v. Guay, 108 F.3d 545, 553 (4th Cir. 1997).

Finally, Dike contends the Government offered inducements to its witnesses in exchange for their testimony in violation of 18 U.S.C. § 201(c)(2) (1994). Dike does not offer any evidence to support this contention. At best, Dike is relying on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), which held that any promise made by the government to a witness in exchange for truthful testimony violates § 201(c)(2). The opinion is not controlling in this circuit and, in any event, it has been vacated.

For the foregoing reasons, we affirm the conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

6